Mark Bettilyon, Utah Bar No. 4798
Peter M. de Jonge, Utah Bar No. 7185
Jed H. Hansen, Utah Bar No. 10679
Kurtis M. Hendricks, Utah Bar No. 15626
Joshua T. Gray, Utah Bar No. 20218
THORPE NORTH & WESTERN, LLP
The Walker Center
175 S. Main Street, Suite 900
Salt Lake City, Utah 84111

*Attorneys for Plaintiff,*
*Connor Sport Court International, LLC*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CONNOR SPORT COURT INTERNATIONAL, LLC, a Delaware Limited Liability Company, <br><br> Plaintiff, <br><br> vs. <br><br> B.C. Sport Court Ltd. d/b/a BC Game Court, a a limited Canadian corporation, and Jonathan Harper, a Canadian Resident, <br><br> Defendants. | Case No. 2:26-cv-00636 <br><br> **COMPLAINT** <br> **WITH JURY DEMAND** |

## COMPLAINT

Plaintiff Connor Sport Court International, LLC ("CSCI"), by and through its counsel,

hereby files this Complaint with Jury Demand against Defendants B.C. Sport Court Ltd. d/b/a BC

Game Court ("BC Game Court"), and Jonathan Harper ("Mr. Harper") and alleges as follows:

1

## NATURE OF THE ACTION

1.      CSCI brings this action for breach of contract and conversion under Utah law and cybersquatting under the Lanham Act, Title 15, United States Code § 1051, *et seq*.

## PARTIES

2.      CSCI is a Delaware limited liability company and maintains a principal place of business at 5445 W. Harold Gatty Drive, Salt Lake City, Utah 84116. CSCI has contracted independent distributors, dealers, and installers to sell its athletic flooring products and services nationally across the United States, including within this judicial district.

3.      BC Game Court is a Canadian corporation having a principal place of business at 19749 8 Avenue, Langley, BC V2Z1W1, Canada. BC Game Court has done or now does business under the names "BC Sport Court" "and "BC Game Court." BC Game Court also operates a website located at the URL https://www.getreadytoplay.ca/. The website located at the URL https://www.bcsportcourt.com/ redirects to https://www.getreadytoplay.ca/. The website located at the URL https://www.sportcourtbc.com/ previously redirected to https://www.bcsportcourt.com/.

4.      Mr. Harper is a Canadian resident who has an address at 19749 8 Avenue, Langley, BC V2Z1W1, Canada. Upon information and belief, Mr. Harper is the owner of BC Game Court. Mr. Harper has done or does business under the names "BC Sport Court," "Sport Court BC" and "BC Game Court." Upon information and belief, Mr. Harper also operates the previously mentioned websites.

5.      BC Game Court and Mr. Harper are former distributors of CSCI and are in the business of installing, resurfacing, and maintaining indoor and outdoor athletic surfaces for

2

residential and commercial spaces. Because the prior agreements with CSCI have been terminated, Mr. Harper and BC Game Court now directly compete with CSCI in the athletic flooring industry.

6. Together, Mr. Harper, BC Game Court are sometimes referred to together as the "Former Distributor."

7. Together, the websites operated by Former Distributor, including https://www.getreadytoplay.ca/, https://www.bcsportcourt.com/ and https://www.sportcourtbc.com/ are sometimes referred to together as the "Website."

**JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338 and 15 U.S.C. § 1121. This Court also has supplemental subject matter jurisdiction over CSCI's breach of contract and conversion claims under 28 U.S.C. § 1367 because they are so related to the other claims as to be part of the same case or controversy.

9. This Court has personal jurisdiction over Former Distributor because it entered into an oral contract with CSCI, which it knew was a Utah entity. Upon information and belief, BC Game Court is an alter ego of Mr. Harper, and through BC Game Court and/or his personal oral agreements with CSCI, Mr. Harper is also bound by that oral contract.

10. This Court further has specific personal jurisdiction over Former Distributor because it has intentionally engaged in trademark infringement, counterfeiting and cybersquatting, knowing that the harm will be felt by CSCI in Utah. Former Distributor also breached an oral contract with CSCI knowing that the harm would be felt by CSCI in Utah.

11. Furthermore, this Court has specific personal jurisdiction over Former Distributor because it has purposefully availed itself of the laws of the State of Utah and benefited from the

privilege of conducting business within the State of Utah for years, having contracted with CSCI and deriving substantial revenue from its business contacts with CSCI in this state.

12.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this district. Not only is CSCI, a party to the oral contract at issue, located in this venue, but the harms CSCI complains of are felt in Utah.

## GENERAL ALLEGATIONS

### CSCI'S TRADEMARKS

13.     CSCI is the owner of nearly 30 registered trademarks, including, but without limitation, SPORT COURT® and ®. Together, these are the "CSCI Marks."

14.     Since at least as early as 1974, CSCI (and/or its predecessors-in-interest) has used the mark SPORT COURT® in connection with the sale of athletic flooring, athletic accessories, and distribution, dealership, installation, and maintenance services for those products.

15.     For over 50 years, CSCI (and/or its predecessors-in-interest) has marketed and distributed its goods and services nationally, including in the State of Utah, under the mark SPORT COURT®.

16.     Since at least as early as 2005, CSCI (and/or its predecessors-in-interest) has used the mark ® in connection with the sale of athletic flooring.

17.     For over 21 years, CSCI (and/or its predecessors-in-interest) has similarly marketed and distributed its goods and services nationally, including in the State of Utah, under the mark ®.

18.     CSCI is a leader within the athletic flooring industry and supplies CSCI Marks

4

branded products to many organizations, including, but not limited to the National College Athletic Association (the NCAA) and USA Volleyball.

19.    CSCI has thereby acquired substantial federal and common law trademark rights and goodwill in the CSCI Marks.

20.    CSCI's federal trademark rights include ownership of U.S. Reg. No. 1,100,976 ("the '976 Registration") for the mark SPORT COURT® registered for use in connection with "recreational patio installation services."  This mark has acquired incontestable status under 15 U.S.C. § 1065. Attached as Exhibit A is a copy of the '976 Registration certificate and a printout of its current status on the Trademark Status & Document Retrieval system of the United States Patent and Trademark Office ("TSDR").

21.    CSCI is also the owner of U.S. Reg. No. 1,155,586 ("the '586 Registration") for the mark SPORT COURT® registered for use in connection with "sports equipment-namely, backboards, nets and ball rebounders." This mark has acquired incontestable status under 15 U.S.C. § 1065. Attached as Exhibit B is a copy of the '586 Registration certificate and a printout of its current status on TSDR.

22.    CSCI is also the owner of U.S. Reg. No. 1,727,818 ("the '818 Registration") for the mark SPORT COURT® registered for use in connection with "recreational and athletic play surfaces and related equipment for said surfaces; namely, nets, basketball backboards and lighting fixtures sold as a unit."  This mark has acquired incontestable status under 15 U.S.C. § 1065. Attached as Exhibit C is a copy of the '818 Registration certificate and a printout of its current status on TSDR.

23.    CSCI is also the owner of U.S. Reg. No. 2,479,328 ("the '328 Registration") for

5

the mark SPORT COURT® registered for use in connection with "plastic interlocking floor tiles." This mark has acquired incontestable status under 15 U.S.C. § 1065. Attached as Exhibit D is a copy of the '328 Registration certificate and a printout of its current status on TSDR.

24.     CSCI is also the owner of U.S. Reg. No. 3,363,099 ("the '099 Registration") for the mark ®  registered for use in connection with *inter alia*, "non-metal interlocking floor tiles;" "recreational and athletic play surfaces, namely, athletic flooring;" "recreational and athletic play equipment;" and "recreational patio installation services."   This mark has acquired incontestable status under 15 U.S.C. § 1065. Attached as Exhibit E is a copy of the '099 Registration certificate and a printout of its current status on TSDR.

25.     As a result of CSCI's long and extensive use of the CSCI Marks, the CSCI Marks have become well-known as indicators of high-quality athletic flooring and related services.

26.     The CSCI Marks have acquired significant goodwill and are assets of enormous value.

27.     Through CSCI's promotion and advertising under the CSCI Marks, the public has come to recognize the CSCI Marks as originating from CSCI.

28.     The CSCI Marks are distinctive when used in connection with CSCI's goods and services.

THE ORAL AGREEMENT FOR DISTRIBUTOR SALES AND MARKETING IN BRITISH COLUMBIA

29.     To better market and sell its products under the CSCI Marks, CSCI enters into sales and marketing agreements with distributors and dealers. These agreements allow the distributors or dealers to act as CSCI's designated distributor or dealer for a particular geographic area and to benefit from the goodwill associated with the CSCI Marks. In exchange for this opportunity, the

6

dealers and distributors must meet certain performance thresholds and CSCI's brand standards.

30.    In or around 2016, CSCI and Former Distributor entered into an oral agreement related to the distribution, marketing, and sales of CSCI products.  The oral agreement is referred to herein as the "Agreement."

31.    As part of the Agreement, Former Distributor agreed to certain terms and conditions including, but without limitation, the following:

    a.  The purchase of CSCI branded products at an offered price with payment due within 30 days of delivery of the goods with an assessed interest rate of 1.5% on balances over 30 days.

    b.  The limited license and right to use the CSCI Marks and to purchase, market, sell and distribute SPORT COURT® branded products only from CSCI.  CSCI only granted such permission, including to use the CSCI Marks, so long as Former Distributor was purchasing CSCI products authorized by CSCI and selling only authentic CSCI products.

    c.  The cessation of use of any CSCI Marks upon termination of the Agreement.

32.    Since entering into the Agreement, Former Distributor has enjoyed the benefits of, and profited from, the goodwill associated with the CSCI Marks.

33.    Former Distributor has purchased hundreds of thousands of dollars of CSCI product and paid for that product.  For example, at least as early as April 2018, Former Distributor placed orders with CSCI and was invoiced by CSCI.  Former Distributors pattern of placing orders and receiving and installing authentic CSCI products as an authorized distributor continued through 2026.

34.    Unfortunately, Former Distributor has failed to pay for over $50,000 worth of CSCI product that has been delivered from CSCI to Former Distributor.

35.    On March 31, 2026, CSCI sent Former Distributor written notice that it was ending its business relationship with Former Distributor and appointing a new authorized distribution partner for British Columbia ("Termination Notice").  The Termination Notice explicitly stated that Former Distributor was no longer authorized to use the "Sport Court name, trademarks, branding, or any related representations in any form." The Termination Notice also demanded transfer of ownership of the domain name bcsportcourt.com, and payment of an outstanding balance of $52,109 ("Outstanding Balance").

36.    Unfortunately, after the Agreement with Former Distributor was terminated, Former Distributor did not cease use of the CSCI Marks, did not transfer ownership of the domain name, and did not pay the Outstanding Balance.

### DEFENDANTS' CONTINUING WRONGFUL ACTIONS

37.    Because the Agreement has been terminated, Former Distributor is not authorized to use the CSCI Marks.

38.    Despite termination of the Agreement with CSCI, Former Distributor continues to use the CSCI Marks in violation of the Lanham Act and the Agreement.

39.    Even though Former Distributor no longer has access to genuine SPORT COURT® or other CSCI products, Former Distributor continues to use the CSCI Marks, or marks that are substantially indistinguishable from the CSCI Marks, on the Website, through its domain names https://www.getreadytoplay.ca/,                 https://www.bcsportcourt.com/                 and https://www.sportcourtbc.com/.

8

40.     As noted in the following representative examples, Former Distributor continues to use the CSCI Marks at least on the Website, on social media and in its domain names. Examples of the unlawful uses of the CSCI Marks have been highlighted below:



9



## OVERVIEW OF BASKETBALL COURT INJURIES AND HOW SPORT COURT FLOORING CAN HELP

Basketball is a physically demanding sport that can sometimes lead to injuries. Basketball players may experience ankle sprains, bone fractures, knee injuries, and other physical strains on the court. Understanding the most common types of sports injuries is essential for athletes and coaches to prevent and treat such injuries.

## BECAUSE ACUTE INJURIES HAPPEN SUDDENLY

With Sport Court flooring and outdoor court tiles explicitly designed for basketball courts, athletes can safely play on a slip-resistant surface with ample shock absorption. Sport Court flooring is engineered to withstand heavy use and intense gameplay so that athletes can focus on their game with the peace of mind that they are playing on a court built for their safety and success.

## THE BENEFITS OF SPORT COURT FLOORING FOR OUTDOOR GAME COURTS

There's no better option than Sport Court flooring when it comes to providing a safe and durable playing surface for outdoor game courts. It offers athletes all the traction and performance capabilities to make the most of their game and helps prevent common basketball injuries, such as ankle or knee twists. It isn't only contact sports where injuries happen; many of the most common sports injuries can be non-contact injuries.

Sport Court flooring is weather-resistant and incredibly low-maintenance, ensuring it lasts



These high-quality tiles provide better traction, a level playing surface, and cushioned support to minimize joint impact. Installing Sport Court flooring means athletes can train and compete with peace of mind knowing their safety is being prioritized, allowing them to focus on achieving their goals without unnecessary and avoidable risks.

By taking preventive measures and listening to your body's signals, you can help protect your lower limbs from shin splint and swelling injuries caused by repetitive impact.

## CONTACT BC SPORT COURT WHEN YOU'RE READY TO BUILD YOUR BACKYARD GAME COURT.

Choosing the right Sport Court flooring can help protect athletes from swelling injuries like concussions, other sports-related sprains, and chronic inflammation injuries. Sport Court Flooring provides optimum protection for athletes due to its shock reduction capabilities and soft surface that help attenuate impact in critical body areas.

Sport Court Flooring offers superior shock absorption, reduces damage at the knee joint, and limits instability by improving lower extremity movements. With all these benefits, it's easy to see why athletes choose Sport Court for outdoor sports court flooring to protect them from injuries. Whatever your space or budget, Sport Court offers a variety of surfaces to meet every demand.

Whether you're a professional athlete trying to enhance performance or a recreational facility looking to provide the best experience imaginable, consider BC Sport Court when you're ready to install your outdoor sports court in Vancouver, Victoria, Kelowna, Surrey, Richmond, and many more cities in British Columbia.



41.     Former Distributor also appears to use the CSCI Marks throughout the Website in various other ways, including: hidden code or metadata.

42.     Former Distributor is offering goods and services highly similar to the types of goods and services offered by CSCI and is using the CSCI Marks to sell these other products.

43.     In view of at least the foregoing, and specifically because Former Distributor was a former oral licensee of the CSCI Marks, Former Distributor's actions are likely to cause confusion, to cause mistake, or to deceive consumers as to the source of its goods and services and cause a false association between CSCI and Former Distributor.

44.     Former Distributor's actions constitute a knowing and willful false designation of origin of its goods and services. Former Distributor knew of CSCI's rights in the CSCI Marks since as early asv2016, when Former Distributor entered into the Agreement. When CSCI terminated the Agreement, CSCI reminded Former Distributor of its obligations under the Agreement to cease all use of the CSCI Marks. Despite this knowledge, Former Distributor continues to use the CSCI Marks throughout the Website.

45.     Former Distributor's actions have resulted in, and will continue to result in substantial, imminent, and irreparable harm and injury to CSCI and consumers. Additionally, the harm to CSCI from Former Distributor's actions is not fully compensable by money damages. CSCI has suffered and continues to suffer irreparable harm that has no adequate remedy at law and that will continue unless the infringement committed by Former Distributor is permanently enjoined.

## FIRST CAUSE OF ACTION

### BREACH OF CONTRACT

46.     CSCI realleges and incorporates by reference all of the foregoing paragraphs.

47.     The Agreement between CSCI and Former Distributor is a valid and enforceable contract.

48.     CSCI terminated the Agreement.

49.     Upon termination of the Agreement, Former Distributor was required to cease all use of the CSCI Marks, among other things.

50.     Former Distributor has breached the Agreement in at least the following ways:

    a.   Failing to pay the Outstanding Balance.

    b.   Continuing to use the CSCI Marks after termination of the Agreement.

51.     Former Distributor's breach has damaged CSCI in amounts to be proven at trial.

52.     CSCI is entitled to injunctive relief to force Former Distributor to comply with its contractual obligations.

53.     CSCI is entitled to recover its attorneys' fees, costs and expenses pursuant to the Agreement.

## SECOND CAUSE OF ACTION

### CONVERSION

54.     CSCI realleges and incorporates by reference all of the foregoing paragraphs.

55.     CSCI owns valid United States trademark registrations for the SPORT COURT® Mark, including at least the '976 Registration, '586 Registration, '818 Registration, '328 Registration, and '099 Registration, and holds the exclusive rights to market and sell its products

13

and services bearing these trademarks.

56.    Upon information and belief, Former Distributor is the registered owner of the domains https://www.bcsportcourt.com/ and https://www.sportcourtbc.com/.

57.    Following termination of its Agreement with CSCI, Former Distributor has continued to use the domains https://www.bcsportcourt.com/ and https://www.sportcourtbc.com/ to divert internet traffic away from CSCI for Former Distributor's commercial gain, preventing CSCI from the use and benefit of that domain name.

58.    Upon termination of the Agreement with Former Distributor, CSCI sent a demand to Former Distributor requiring cessation of use and the return of intellectual property to CSCI, but Former Distributor has refused to do so.  As a result, CSCI cannot access or control the domain names    or    any    webpages    associated    https://www.bcsportcourt.com/    and https://www.sportcourtbc.com/.

59.    Former Distributor has thus deprived CSCI of the use and possession of https://www.bcsportcourt.com/ and https://www.sportcourtbc.com/ and all the rights and benefits associated with those domain names to the detriment of CSCI.

60.    Former Distributor is thus liable to CSCI for conversion of the domain names https://www.bcsportcourt.com/ and https://www.sportcourtbc.com/ in an amount to be proven at trial.

61.    CSCI is entitled to an injunction requiring Former Distributor to transfer ownership of the domain names https://www.bcsportcourt.com/ and https://www.sportcourtbc.com/. https://www.bcsportcourt.com/ and https://www.sportcourtbc.com/ to CSCI.

62.

## THIRD CAUSE OF ACTION

### ANTICYBERSQUATTING - 15 U.S.C. § 1125(d)

63.  CSCI realleges and incorporates by reference all of the foregoing paragraphs.

64.  CSCI owns valid United States trademark registrations for the SPORT COURT® Mark, including at least the '976 Registration, '586 Registration, '818 Registration, '328 Registration, and '099 Registration, and holds the exclusive rights to market and sell its products and services bearing this trademark.

65.  Upon information and belief, Former Distributor is the registered owner of the domains https://www.bcsportcourt.com/ and https://www.sportcourtbc.com/.

66.  The domains https://www.bcsportcourt.com/ and https://www.sportcourtbc.com/ are identical to or confusingly similar to CSCI's SPORT COURT® Mark.

67.  Former Distributor is not authorized to use the SPORT COURT® Mark in commerce.

68.  Following termination of its Agreement with CSCI, Former Distributor has continued to use at least the domains https://www.bcsportcourt.com/ to divert internet traffic away from CSCI for Former Distributor's commercial gain.

69.  Former Distributor's acts related to its continued use of the domain names https://www.bcsportcourt.com/ and https://www.sportcourtbc.com/ following termination of its Agreement with CSCI demonstrate a bad faith intent to profit from the SPORT COURT® Mark.

70.  Former Distributor's conduct constitutes cybersquatting in violation of 15 U.S.C. § 1125(d).

71.  Upon information and belief, CSCI is being irreparably damaged by Former

15

Distributor's cybersquatting in the manner set forth above and will continue to be damaged unless Former Distributor is enjoined from using the domain names https://www.bcsportcourt.com/ and https://www.sportcourtbc.com/.

72.    CSCI is entitled to injunctive relief under 15 U.S.C. § 1116(a) as there is no adequate remedy at law to fully redress Former Distributor's illegal conduct.

73.    In addition to injunctive relief, CSCI is entitled to all actual damages and/or statutory damages, and lost profits that it has sustained in the amount to be determined at trial, including but not limited to three times Former Distributor's profits and gains as a result of its unlawful acts described above, attorney's fees, and the costs of this action pursuant to 15 U.S.C § 1117.

74.    CSCI is also entitled to an order requiring Former Distributor to transfer ownership of the domain names https://www.bcsportcourt.com/ and https://www.sportcourtbc.com/ to CSCI.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that the Court enter a judgment in favor of CSCI as follows:

A.    That the Court enter judgment that Former Distributor's actions constitute a breach of the Agreement;

B.    That the Court enter judgment that Former Distributor's failure to transfer the domain name https://www.bcsportcourt.com/ and https://www.sportcourtbc.com/ constitutes conversion;

C.    That the Court enter judgement that Former Distributor's bad faith use of the domain names https://www.bcsportcourt.com/ and https://www.sportcourtbc.com/ after

16

termination of the Agreement is a violation of 15 U.S.C. § 1125(d);

D.      That the Court preliminarily and permanently enjoin Former Distributor from using the CSCI Marks or any term that infringes or is a colorable imitation of the CSCI Marks, or unfairly competes with CSCI;

E.      That the Court require Former Distributor to sanitize its online presence, removing any and all infringement of the CSCI Marks from the visible text and hidden code on the Website, advertising, or social media and otherwise require Former Distributor to comply with the Agreement, including transferring the domain names https://www.bcsportcourt.com/ and https://www.sportcourtbc.com/ to CSCI;

F.      That the Court order such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression that the products and services sold and promoted by Former Distributor are authorized by CSCI or related in any way to CSCI's goods or services and to provide CSCI with access to and control over digital assets associated with the CSCI Marks;

G.      That the Court enter judgment ordering Former Distributor to provide CSCI with a full and complete accounting of all products sold and profits gained in connection with its infringing and/or counterfeiting activities;

H.      That the Court enter judgment that CSCI recover from Former Distributor damages in an amount to be proven at trial, including general, special, actual, and/or statutory damages pursuant to 15 U.S.C. § 1117.  Pursuant to 15 U.S.C. § 1117, the amounts should include CSCI's damages and Former Distributor's profits, if any, or at CSCI's selection, statutory damages pursuant to 15 U.S.C. § 1117(d);

I.      That the Court require Former Distributor to pay prejudgment and post-judgment interest until such awards are paid;

J.      That the Court require Former Distributor to pay CSCI's costs, expenses and attorneys' fees incurred in this action;

K.      That the Court require Former Distributor to engage in corrective advertising; and

L.      That the Court order such other and further relief for CSCI as shall seem just and proper to the Court.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, CSCI hereby demands a jury trial on all claims and issues so triable.

DATED this 8th day of July, 2026.

Respectfully Submitted,

*/s/ Jed H. Hansen*
**THORPE NORTH & WESTERN, LLP**
Mark Bettilyon, Utah Bar No. 4798
Peter M. de Jonge, Utah Bar No. 7185
Jed H. Hansen, Utah Bar No. 10679
Kurtis M. Hendricks, Utah Bar No. 15626
Joshua T. Gray, Utah Bar No. 20218
175 S. Main Street, Suite 900
Salt Lake City, Utah 84111

*Attorneys for Plaintiff,*
*Connor Sport Court International, LLC*

19